ALFRED S. ELLIOTT, Assignee of the New Castle Iron & Steel Company, defendant below, appellant, *v.* EDWIN E. MONTELL, *et. al.,* plaintiffs below, respondents.

*Assignment for benefit of Creditors — Appeal from Court of Chancery in Voluntary Assignment.*

A voluntary assignment executed by a debtor to a trustee of his own selection, without the assent of his creditors, is invalid as against such creditors, and the property thus assigned is subject to execution attachment on the process of said creditors.

Chapter 187, Volume 15, in regard to voluntary assignment for benefit of creditors, does not conflict with Section 4 of Chapter 132 of the Revised Code.

An appeal to reverse a judgment rendered upon a case stated and referred by the parties to the opinion of the court, without a reservation in the case stated of the right of appeal. Appeal dismissed.

(*January 8, 1885.*)

APPEAL from Chancery, New Castle county. *Dismissed.*

By deed dated Oct. 15, 1881, but acknowledged and delivered on Oct. 24, 1881, the New Castle Iron and Steel Company duly assigned, transferred and set over unto Alfred S. Elliott, assignee, for benefit of its creditors generally, all the goods, chattels, tools,

implements of trade, machinery and effects of whatsoever character and description belonging to it; in trust to sell and dispose of the same and with the money arising therefrom to pay the creditors of said company in full if the assets were sufficient, but if not then to pay the creditors pro rata according to their respective demands without preference as between individuals.

The creditors had no knowledge of the assignment at the time it was made and never concurred in it.

This deed of assignment contained no reservation favorable to the assignor, nor any stipulation for release or discharge from any portion of the indebtedness.

The trust was accepted and full custody and possession of said assigned state was at once taken by said Alfred S. Elliott, who on Oct. 24, 1881, filed with the Register an inventory of the effects so assigned, together with the appraisement of the assigned state made on said date by Edward Betts, and Charles W. Pusey, appraisers appointed by the Chancellor.

The assignee gave bond with sureties in the sum of $20,000, which was duly filed with the Register.

On Oct. 25, 1881, Edwin E. Montell, a creditor, recovered judgment in the United States Circuit Court for the District of Delaware against said New Castle Iron and Steel Company for $847.82.

On the same date, Grubb and Sons, creditors, likewise recovered judgment for $1209.29, and on the same date Edward S. Davis, a creditor also recovered judgment for $1,327.07. Upon which judgments writs of execution were subsequently issued to the Marshall who levied upon the goods, chattels, tools, etc., in the custody and possession of said Alfred S. Elliott, being the assigned state of the New Castle Iron and Steel Company aforesaid, notwithstanding said assignment and transfer of said property.

The assigned state was subsequently sold by the Assignee at private sale, by consent without prejudice until the rights of the respective parties had been determined by the Chancellor.

*John H. Hoffecker, Jr.*, for appellant :

Assignments may be either :

I. To the creditors themselves directly which are not valid without their assent, or

II. To trustees for the benefit of creditors and such assignments do not require the assent of creditors to render them valid and operative.

"Such is the settled rule of our law."

See *Burrill on assignments*, P. 166, Sec. 125; *Nicoll v. Mumford*, 4 Johns, Ch. 522; *Ward v. Lewis*, 4 Pick., 518; *Pingree v. Comstock*, 18 Pick., 46; *Weir v. Turnhill*, 2 Yerger, 57; *Robertson v. Sublett*, 6 Humph., 313; *Ingram v. Kirkpatrick*, 6 Ired. Eq., 462; *Stimpson v. Fries*, 2 Jones Eq., 156; *Jones v. Dougherty*, 10 Ga., 273; *Bellany v. Bellany*, 6 Fla., 62; *Hall v. Dennison*, 17 Vt., 310; *2 Kents Com.*, 532 and notes; *Brown v. Chamberlain*, 9 Fla., 464; *Forbes v. Scannell*, 13 Cal., 242.

By the established principles of law as held by eminent authority in this country it is not necessary to the creation of any trust by deed in favor of any person, that the person for whose benefit the trust is created should be a party to it.

See opinion of Justice Story in *Halsey v. Whitney*, 4 Mason, 206, 214. Such assignment takes effect from the execution and delivery, and not from the time it is assented to by the creditors. 2 Story Eq., 1037, note a; *Nichols v. Mumford*, 4 John Ch., 529. It is not necessary to the validity of such a deed of assignment that the creditors should be parties to it, a bona fide assignment accepted by the assignee will be deemed

I. A valid conveyance.

II. Founded on a good consideration.

III. Good against creditors proceeding against the assigned estate by attachment, execution or otherwise. Unless all the creditors repudiate it. *2 Story's Equity*, Ch. 28, Sec. 1036 and notes; *Brooks v. Marbury*, 11 Wheat., 78; *Grover v. Wakeman*, 11 Wend., 189-227. And Courts of Equity generally will compel the execution of the trust for the creditors, though they be not at the time assenting and parties to the conveyance.

*Halsey v. Whitney*, 4 Mass., 206, 214; *Nicholl v. Mumford*, 4 John. Ch., 522, 529; *Brooks v. Marbury*, 11 Wheat., 78; *Gray v. Hill*, 10 Sarg. and R., 436; *Kinnard v. Thompson*, 12 Ala., 487; *Smith v. Turrentine*, 8 Ired. Eq., 185.

If it is executed by the assignor and delivered to the assignee, and he accepts it and enters upon the performance of the trusts, he is as much bound as if he had executed it.

*Cunningham v. Freeborn*, 1 Edw. Ch., 256, affirmed on appeal 11 Wend., 240; *Burrill on Assignments*, 357, Sec. 245.

Nor is it necessary to the validity of a voluntary assignment by a debtor that the creditors should be consulted previous to making it.

*Burrill on Assignments*, 409, Sec. 283; *Brashear v. West*, 7 Pet., 608–613; *Reinhart v. Bank of Kentucky*, 6 B. Mon., 252; *Skipwith exes. v. Cunningham*, 8 Leigh., 271; *Phippen v. Durham*, 8 Gratt., 457; *Johnston v. Zanis Trustees*, 11 Gratt., 552, 564; *Dance v. Seaman*, 11 Gratt., 778, 781; *Burrill on Assignments*, 416, 417.

It is no objection that it was made pending suit by the creditors of the assignor. 2 Kent Com., 532 and notes. The assignment when once accepted by the assignor operates as a conveyance and not as a mere power, and cannot be revoked by the assignor, or defeated by the renunciation of the assignee.

*Burrill on Assignments*, 431; *Briggs v. Palmer*, 20 Barb., 392, and cases cited in note 5.

The assignment to Elliott was an assignment at common law and was not statutory.

Chap. 187, Vol. 15, p. 311, &c. (Laws of Delaware), does not give such deeds any power or validity beyond their unqualified recognition, but simply prescribes a mode for enforcing the trust and requires that the trustee should give bond to "faithfully execute the trust," and that the warrant of attorney "shall inure to the use of all persons interested in the property assigned."

Before such an act the remedy had to be sought by the creditors through a Court of Chancery.

The construction given by the Chancellor is not the construction urged by the respondent.

How could it be possible for the assignor to revoke the trust after acceptance, and qualification by the assignee as provided by our statute above quoted. He would be prevented by the court and would be stopped by his own act. 2 Story Eq., 1037, note a.

Massachusetts furnishes the only prominent exception to the

principles as above contended for, and that exception grows out of the operation of the old system of attachment, and is regulated by a special statute.

*Burrill on Assignment,* 32, 33, 34, 35 and notes.

The old English rule as laid down in *Bell v. Cureton, Garrard v. Lauderdale, Walwyn v. Coutts, Acton v. Woodgate* and other cases, and followed approvingly in *Waters v. Comely,* 3 Harr. (which was decided as far back as 1840), is not now, and never has been the prevailing rule in this country.

See *Burrill on Assignments,* 167, *et. seq.* and notes; *2 Kent Com.,* note d., 718.

The Supreme Court of the United States have expressly so ruled in *Mayer v. Hallman,* 91 U. S., 496; *Reed v. McIntyre,* 98 U. S., 507.

The same doctrine is enunciated in *In re Biesenthal,* 15 N. Bank, Rep., 228; *Everett v. Stone,* 3 Story, 454; *Dodge v. Sheedon,* 6 Hill, 9; *Seamon v. Sloughton,* 3 Barb., 344; *Cook v. Rogers,* Am. Law Reg., Vol. 14, 633.

The precise question involved in this present case has never been squarely before this court.

In *Waters v. Comely,* 3 Harr., 117, the court to have decided otherwise than it did, must have sustained an act by the debtor which was confessedly fraudulent.

And in violation of the statute of Insolvency.

There the court interferred to prevent the debtor from making an unlawful and fraudulent preference.  Here the court is asked by the complainant to aid him in obtaining and enforcing an unlawful priority and an unwilling preference.

In so far as the court in *Waters v. Comely* undertook to decide that a debtor in failing circumstances cannot make a general assignment with no preferences or benefits reserved, unless his creditors assent, it was *obiter dictum* and should not control the court now in deciding differently.

The rule as laid down in *Waters v. Comely* is not the rule of the United States Supreme Court, and it is not common law.

*Benjamin Nields and George Gray,* for respondents:

Assignments by insolvent debtors in trust to pay their debts,

either in a specified order or *pro rata* are not deemed of sufficient validity to protect the assigned property from the attachments of the creditors of the assignor. There is no adequate consideration; and without this, no insolvent debtor can so dispose of his property as to place it beyond the reach of his creditors. The validity of such assignments much depend upon the assent of the creditors. Nothing being paid by the assignees, the consideration, as to them, must consist in their covenants to execute the trusts.

The creditors are not obliged to become parties to them; nor is their assent to their provisions to be presumed. *They may prefer to resort to attachments.* The option is to be exercised by them, and to be evidenced by some overt act on their part.

If they decline or omit to join in the assignment, there are no *cestui que trusts* and so no trusts to be executed, and the consideration entirely fails. All the objects of the assignment are defeated and the whole proceedings prove abortive, leaving the assignee's property to be taken by the creditors in such way as they may deem expedient.

*Fall River Iron Works v. Crood & Trusts*, 15 Pickering, 11.

In the case of *Waters, et al. v. Comly*, 3 Harr., 117, the court cites with approval the principle, stated by the court in the case of *Bill v. Curction*, 2 M. & K., 511, viz: "A man who, without any communication with his creditors, puts property into the hands of trustees for the purpose of paying his debts, proposes only a benefit to himself and not to his creditors. It would be a result most remote from the contemplation of the debtor, if it should be held that any creditor discovering the transaction, should be able to fasten upon the property and invest himself with the character of *cestui que trust*."

It being the law in this State, as declared in *Waters v. Comly*, that a debtor, who executes a deed conveying his property to a trustee for the payment of his debts, to which deed his creditors are neither parties or privies, will not divest the debtor of the beneficial interest in such property, nor create the relation of *trustee and cestui que trust*, between the person to whom the conveyances is so made, and the creditors of such debtor.

In what respect, if any, did the law requiring trustees in voluntary assignments for the benefit of creditors, to give bond, with

security, for the faithful execution of the trust and other purposes, passed March 18th, 1875, modify the rule of law in this State as declared in *Waters v. Comly*?

This law, nowhere, expressly or by implication, creates the relations of trustee and *cestui que trusts* between the assignee and the creditors, nor does it in any way attempt to alter or modify the law as it existed at the time of its passage. It does not require the creditors to recognize the assignee in any way. It does not provide that the creditors shall accept from the assignee any part of the assigned estate. It does not provide that if the creditors refuse to accept from the assignee their proportions of the assigned estate, that the debtor shall be discharged from the payment of the portion so received by the assignee, or from the payment of any amount whatever.

The law does not purport to be an insolvent law; it has none of the distinctive features of such a law. It does not provide for the discharge of the assignor from the payment of his debts or any part thereof, nor does it prevent creditors from proceeding against the assignor to recover judgments on the claims and issuing executions thereon, notwithstanding the assignment having been made for the benefit of such creditors.

This act appears to have been intended to apply to, and operate upon, voluntary assignments made for the benefit of creditors, under and pursuant to the law existing in this State at the time it was passed, viz: Assignments made with the knowledge and consent of the creditors of the assignor, and in such form and with such effect as to create the relation of trustee and *cestui que trust* between the assignee and creditors; where such an assignment is made the effect of the law is to protect the debtor, as well as the creditors, by requiring the assignee to give security.

The assignment was made in this case to prevent the above named judgment creditors from making their claims by execution process.

It does not appear that any of the creditors assented to the deed of assignment, none were named in the deed of assignment. No list of them was given; and no concurrence of any one or more of them anywhere appears. When it nowhere appears that any of the creditors consented to become parties or privies to

the trust then, as between the assignee and creditors, it cannot be assumed that there exists the relation of *cestui que trust* and trustee.

Where none of the creditors consent to the deed of assignment, but all refuse to become parties or privies to the trust then certainly, as between the assignee and creditors, the relation of *cestui que trust* and trustee cannot exist, and, in the absence of affirmative consent on the part of the creditors, the court will not presume that they do consent.

If it should appear that only part of the creditors consented, then the assignee would hold the property only for the benefit of those who consented thereto, which would be in effect an assignment for the benefit of such of the creditors only as consented to the assignment, and would be void.

Sec. 4, Chapter 132, 785, *Laws of Delaware,* provides, "If any person in contemplation of insolvency, or in contemplation of taking the benefit of any of the insolvent laws of this State, shall make an assignment of his estate, or effects, for the benefit of creditors, and by such an assignment, either under its provisions, or otherwise, shall prefer any creditors to others, or shall, in or by such assignment, secure or pay to any creditors a greater proportion of his debt, or demand than shall be secured or paid to all his creditors; every such assignment so giving a preference shall be deemed fraudulent and absolutely void, and the estate or effects contained therein shall be liable to be taken in execution, or attached for the payment of such assignor's debts, as fully as if no such assignment had been made; and the person making such fraudulent assignment shall forever be deprived of the benefit of any insolvent law of this State."

In this case, the assignee is not a creditor of the company, and, therefore, holds none of the property for the benefit of himself.

In the case of *Waters et al. v. Comly,* 3 Harr., 117, the court say, "The purpose and policy of the law is to prevent a voluntary transfer of the entire estate of the debtor for the benefit of a few creditors."

And in the same case the court further say, that "If Waters & Laird, under the same circumstances, instead of giving the bond, had executed a deed conveying their property to McMakin, Burgess

& Kelly for the payment of their debts, to which the creditors were neither parties nor privies, it would not have divested the beneficial interest of Waters & Laird, and created the relation of trustees and *cestuis que trust* between McMakin, Burgess & Kelly, and the creditors *mentioned in the schedule.*"

*Wallwyn v. Coutts,* 3 Mer., 707 ; *Gaward v. Lord Lauderdale,* 3 Sm., 12 ; *Acton v. Woodgate,* 2 M. & K., 495 ; *Bill v. Cunton,* 2 M. & K., 511 ; *Fall River Iron Works v. Croad and trustee,* 15 Pickering, 11.

In the case of *Bryden v. Moore,* 11 Pickering, 362, the court say : " That an assignment to one to pay creditors who are not parties, or assenting thereto, is void as against the creditors of the assignor.

It has also been held that when time is allowed for creditors to come in, if the property be attached before the creditors have all come in, the attaching creditor takes precedence of a creditor who shall afterwards become party to the assignment."

*Russell v. Woodward,* 10 Pickering, 408 ; *Marston et. al. v. Cobim,* 17 Mass., 454.

In the court below SAULSBURY, CHANCELLOR, delivered the following opinion :

" It is agreed that on the 24th day of October, 1881, the New Castle Iron and Steel Company, then being indebted to divers persons and firms and among others to Edwin E. Montell, Grubb and Sons, and Edward S. Davies, made a voluntary assignment of all its effects to Alfred S. Elliott in trust to sell and dispose of the same and to collect and recover all the outstanding claims and debts due the said company, and from the proceeds after deducting his reasonable costs and charges, to pay the creditors of the said company in full, if the assets realized should be sufficient, but if not sufficient, to pay the demands of said creditors *pro rata*, without preference as between individuals. Alfred S. Elliott, the assignee accepted the trust and entered upon the discharge of his duties under it and filed with the Register in Chancery an inventory of the effects assigned, on the same 24th day of October, 1881, accompanied by his affidavit and gave bond with sureties

and on the same day the chancellor appointed appraisers, who returned their appraisement on the 26th day of October, 1881.

It is further agreed that the creditors of the New Castle Iron and Steel Company had no notice or knowledge of the said assignment at the time of its execution, and that neither Montell, Grubb and Sons or Edward S. Davies have ever given any assent thereto. It further appears as admitted that the said Montell, Grubb and Sons and Davies have severally recovered judgments on their respective claims in the Circuit Court of the United States for the District of Delaware, at the October Term, 1881, of said court, on the 25th day of October, and subsequently caused writs of *fieri facias* to be issued which were delivered to the marshall, who levied upon the goods and chattels assigned as aforesaid, as the property of the said Company, and advertised them for sale in execution of the writs. Pending the proceedings the assignee wrote to the creditors suggesting that the interest of all parties would be best promoted by permitting them to dispose of the goods at private sale, and obtained the consent of the said execution creditors among others, with reservation of their rights, the complainants expressly stipulating that their status was not to be affected but that the fund should be held subject to the determination and distribution of a Court of Equity upon all the facts. By this sale therefore, the goods have simply been converted into money, without altering the position of the parties in relation to the right thereto.

Upon the facts the case before me is reduced to the consideration of two questions.

I. Whether the assignment by the New Castle Iron and Steel Company, taken irrespective of the Act of the General Assembly, passed March 18, 1875 (15th Vol., 311) was sufficient to vest the property therein mentioned in Alfred S. Elliott the assignee, so as to protect it against creditors, neither parties nor previous to the said asssigment even consenting thereto.

II. Whether if not otherwise protected the said Act of March 18, 1875, has the effect to render the assignment valid, so as to have that operation.

In determining the first question it seems to me that this case falls clearly within the principle announced in *Waters et al. v. Comly*, and whatever might have been my opinion if the matter

had been *res integra*, I am bound by the judgment of the Court of Errors and Appeals. In that case Waters and Laird, being in failing circumstances, executed a bond to McMath, Burgess and Kelley for a large sum of money, exceeding their assets, upon a parol trust to pay the creditors mentioned in a schedule. Kelly, one of the assignees, being a creditor to the amount of $400.

It is manifest from the statement of facts that there was an attempt to prefer creditors, in which it differs from the case now before me, but the decision of the court did not proceed wholly nor mainly upon that consideration. It was an appeal from chancery and the chancellor in discussing the meaning of the act concerning fraudulent assignments had said: " It is apparent this act was not made to prevent assignment, but to prevent persons in contemplation of insolvency, either by assignment or otherwise, doing any act to prefer creditors." This view was not sustained by the Court of Errors and Appeals. On the contrary it was distinctly announced by that court and reaffirmed in subsequent cases that when no assignment is attempted, the preference by a debtor of particular creditors either by payment or through the instrumentality of trade is not forbidden even if done in contemplation of insolvency.

In the case of *Wharton et al. v. Clements et al.*, 3 Ch. Rep., 209, Chancellor Bates construes the case of *Waters v. Comly* to announce the conclusion of the majority of the court on this point, that the bond being given in an amount exceeding the whole of the property of the debtor was equivalent to and a substitute for a formal assignment, and as such was an evasion of the statute. The decision in *Waters v. Comly*, however, was not based entirely nor principally on that ground, but on another in which the whole court concurred and which was entirely beside any question of preference of creditors.

This ground was the invalidity of a voluntary assignment executed by a debtor to a trustee of his own selection without the privity or assent of his creditors, as against such creditors.

On this subject the enunciations of the judge are harmonious and unequivocal. They all hold in conformity with *Garrard v. Lord Lansdale, Bell v. Cureton,* and the line of cases announcing the same principle, that a deed of assignment operates merely as a power to the trustee, revocable by the debtor, that the character of

*cestui que trust* never existed between the creditor and the trustee, but that the debtor himself was the only *cestui qui trust,* having in him the whole beneficial interest, that the arrangement was one wholly for the convenience of the debtor and that the creditors were without remedy against the nominal trustee either at law or in equity.

Such being the judgment of the highest court of this State it is binding upon me and in my opinion it clearly embraces the case of this assignment now under consideration.

II. I cannot see that the matter is helped by the act of March 25, 1875. That act no where professes to declare what shall constitute a valid assignment but only prescribes that when a voluntary assignment is made, certain things must be done as therein specified. Now this must be construed to mean an assignment not prohibited by law and which would otherwise be unimpeachable. That this must be the meaning is manifest from the phrase " in trust for his creditors or some of them." Now were the construction to be given that this act validated an assignment because its provisions were complied with, it is clear that such construction would repeal the statute prohibiting a preference of creditors by a debtor in contemplation of insolvency for the act speaks expressly of a partial as well as of a general assignment and of an assignment for the benefit of particular creditors in exclusion of others.

The statute must be read in the light of the purpose for which it was enacted, to wit, the security afforded both to the *cestui que trust* and the assignor, by the bond of the trustees, the inventory and appraisement and the supervisory control of the chancellor and not as validating assignments otherwise illegal, or as in any wise altering existing laws regulating the capacity on the part of debtors to create such trusts or as declaring the effect of such trusts when attempted to be made between the debtor and his voluntary assignee without the privity or assent of his creditors.

Decree accordingly."

*Benjamin Nields,* for respondents, moved for the dismissal of the appeal :

Where by statute a court or judge is clothed with a special

jurisdiction, and no appeal is provided by statute, none will be to this court.

*Baltimore, &c. Co. v. Northern, &c. R. R.*, 15 Maryland, 193; *Condon's Case*, 8 Gill & Johnson, 443; *Carter v. Dennison*, 7 Gill, 157; *8 Lamott v. Mattyby*, 8 Md., 5; *Lansing's Appeal*, 10 Wis., 120.

A writ of error does not lie to reverse a judgment rendered upon a case stated and referred by the parties to the opinion of the court.

*The Inhabitants of Alfred v. the Inhabitants of Saca*, 7 Mass., 379; 9 Mass., 328; 21 Pickering, 227.

The remedy of the assignee was complete at law—replevin, assumpsit.

THE COURT sustained the motion and dismissed the appeal.